Defendant-appellant, The Ohio State University Medical Center ("OSUMC"), appeals from the decision and entry of the Court of Claims of Ohio concluding that Dr. Charles Little, M.D. ("Dr. Little") is entitled to civil immunity pursuant to R.C. 9.86
and 2743.02(F). For the reasons that follow, we affirm.
The Court of Claims' determination arose out of a medical malpractice action filed in the Court of Claims on October 29, 1997, naming OSUMC as a defendant. On the same day, plaintiff-appellee, Peter Ferguson, filed a companion case in the Franklin County Court of Common Pleas naming Charles M. Little, M.D., Emergency Care Association, Inc., and Eric D. Drobny, M.D., as defendants. The Court of Claims conducted an evidentiary hearing to determine whether Dr. Little was entitled to immunity pursuant to R.C. 2743.01(F) and 9.86. On June 3, 1998, the trial court issued its decision and entry finding that Dr. Little was immune.
OSUMC appealed the June 3, 1998 decision and entry, assigning as error the following two assignments of error:
 1. The Court of Claims erred when it held that Dr. Charles Little was entitled to personal immunity.
 2. The Court of Claims erred when it held that this Court's decision in Chitwood v. University of Cincinnati required the conclusion that Dr. Charles Little was entitled to personal immunity.
The assignments of error are related and will be addressed together. The determination as to whether or not a state employee is entitled to personal immunity is governed by R.C.2743.02(F) and 9.86. R.C. 2743.02(F) provides, in pertinent part:
 A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
R.C. 9.86 provides:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
In order to be entitled to personal immunity under these statutes, one must be an officer or employee. R.C.109.36(A)(1)(a) and (b) define officer or employee as:
 (a) A person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state.
 (b) A person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state.
Whether a state employee is entitled to personal immunity is a question of law. Nease v. Medical College Hosp. (1992), 64 Ohio St.3d 396,400, citing Conley v. Shearer (1992), 64 Ohio St.3d 284. While the issue of immunity is a question of law, consideration of the specific facts is necessary. See Lowry v.Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835, unreported (1997 Opinions 524, 533). In this case, the facts are largely undisputed.
Dr. Little was an attending physician at the OSUMC emergency room in December of 1996. He was also a member and equity owner of a private practice corporation called Emergency Care Associates, Inc. ("ECAI"). On December 4, 1996, at approximately 6 p.m., plaintiff, Peter Ferguson, arrived at the emergency room at OSUMC reporting pain to his right testicle, swelling, nausea, and vomiting. A third-year resident, Dr. Drobny, conducted a physical examination, and ordered a testicular ultrasound, which was read as showing epididymal inflammation. Dr. Drobny diagnosed plaintiff with epididymitis, an infection of the epididis, which sits at the back of the testicle. The plaintiff alleges that the diagnosis of epididymitis was incorrect and that he actually suffered testicular torsion resulting in the loss of the testicle.
As the on-call attending physician, Dr. Little does not recall seeing plaintiff personally but testified by way of deposition that he would have discussed the case with the resident and reviewed the chart prior to the plaintiff's discharge from the emergency room. The plaintiff remembered being treated by only one physician, Dr. Drobny, and that he never met Dr. Little while he was in the emergency room. The plaintiff was given antibiotics and discharged with instructions to follow up with the Rardin Family Practice Center. Dr. Little signed off on the emergency department record with the note: "I provided or directly supervised the Emergency Department care of this patient."
Every person who is discharged from the emergency room at OSUMC receives a bill from ECAI. Plaintiff was billed $96 by ECAI for Dr. Little's services rendered on December 4, 1996. Plaintiff was also billed $327.40 by OSUMC for emergency room services and the ultrasound test.
OSUMC urges this court to adopt the position that when an attending physician, through his private practice corporation, bills for his or her services to a private patient, the physician is acting outside the scope of his or her employment with the state of Ohio. We find this analysis does not always answer the question of whether the physician is treating a private patient, particularly in situations such as this where Dr. Little does not otherwise see patients outside the emergency department. While billing may be a relevant factor in determining whether the physician is acting within the scope of his state employment, it may not always be the determinative factor.
The key issue in determining whether Dr. Little is entitled to personal immunity is whether he saw the patient only in his capacity as an attending physician supervising residents at OSUMC or whether he saw the patient as a private patient. In making these determinations, this court has considered many factors, including:
 1. whether the physician held a faculty position and also was a member of a professional corporation;
 2. whether the patient was previously a private patient of the physician;
 3. whether the patient was referred to the physician;
 4. whether the patient was billed through the professional corporation;
 5. whether any of the physician's fee was paid to the state entity;
 6. whether the professional corporation provided medical malpractice insurance;
 7. whether the physician was paid by the state entity for the services provided to the patient;
 8. how much the physician was paid by the state entity and how much by the professional corporation;
 9. whether the physician was required to be part of a private practice group in order to work at the state entity;
 10. whether the physician treated the patient independently of the resident or only in a supervisory capacity;
 11. whether the physician actually performed any of the procedures in issue;
 12. whether the private practice group determined the fees to be charged the patient;
 13. whether the private practice plans are controlled by the state entity;
 14. whether the patient was seen through the state entity's clinic; and
 15. whether a resident was involved in the treatment of the patient.
In this regard, the situation in this case is analogous to the facts in Scarberry v. The Ohio State University Hospitals
(Dec. 3, 1998), Franklin App. No. 98AP143, unreported (1998 Opinions 5389). In Scarberry, this court held that the attending emergency room physician was entitled to personal immunity because he was not treating a private patient, but a patient of the hospital through the emergency room as part of his duties of supervising resident physicians.
The similarities between this case and the Scarberry case are striking. In the Scarberry case, the attending physician when the patient was admitted was Dr. Jonathan Brooks. Dr. Brooks testified that practically all the patients in the emergency room were his patients because, unless another attending physician saw the patient in the emergency room, he was responsible for the patients and saw every patient who came through the emergency room. He also stated that every patient at the hospital had to have an attending physician and that the resident physicians could not be considered attending physicians. Dr. Brooks belonged to the same practice group as Dr. Little, and his practice group billed the patient $151 for his services while OSU Hospitals billed the patient $151,358.78, including $375.12 for the emergency room. Dr. Brooks received a $90,000 salary from ECAI and a $25,000 salary from OSU Hospitals. Dr. Little received an $86,000 salary from ECAI and $34,000 from OSU.
The facts in this case indicate that although ECAI billed plaintiff for his services, Dr. Little's only involvement with plaintiff was to supervise the care of plaintiff in his capacity as the attending physician supervising residents. Thus, we conclude the trial court was correct in finding that Dr. Little was acting within the scope of his employment with OSUMC and was, therefore, entitled to immunity. Both assignments of error are not well-taken.
Based on the foregoing, both assignments of error are overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.